UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VIDIA POWELL,<br><br>Plaintiff,<br><br>v.<br><br>INGALLS CHILD CARE CENTER a/k/a<br>INGALLS MEMORIAL HOSPITAL,<br><br>Defendant. | No. 14 CV 5925<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Vidia Powell worked as a pre-kindergarten teacher at the child care center at Ingalls Memorial Hospital. In 2013, Powell's supervisors received complaints from other teachers and a parent regarding Powell's treatment of the children in her care, and subsequently, Powell was terminated from her employment. Powell alleges that she was actually terminated because of her race and age, in violation of Title VII, 42 U.S.C. § 2000e-2, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. Ingalls moves for summary judgment, arguing that there is no genuine dispute of material fact precluding judgment in its favor. For the reasons discussed below, Powell has not set forth a prima facie case for racial or age-based discrimination or raised a genuine dispute to suggest that the reasons for her firing were pretextual. Defendant's motion for summary judgment is granted.

**I.  Legal Standard**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014); Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Local Rule 56.1(b)(3)(B), the opposing party must respond to each numbered paragraph in the moving party's statement of undisputed material facts by including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon. Under Local Rule 56.1(b)(3)(C), the opposing party must include separately numbered statements of any additional facts that require the denial of summary judgment, and the statements of fact by the moving party will be deemed admitted unless controverted by a statement of the opposing party.[1]

---

[1] Powell's response to Ingalls's 56.1 statement fails to comply with Local Rule 56.1. Powell disputes the majority of Ingalls's facts without citing admissible supporting evidence, contrary to Local Rule 56.1(b)(3)(B). Powell's response largely consists of: arguments not disputing but merely characterizing Ingalls's facts, meritless objections, and additional facts (nearly all of which lack evidentiary support). These additional facts consist of lengthy quotations from Powell's declaration in opposition to summary judgment and were not included in a separate statement of additional fact, as required under Local Rule 56.1(b)(3)(C). Powell's declaration includes unspecific, asserted facts outside Powell's personal knowledge, and also includes hearsay. For example, Powell generally refers to Caucasian teachers who received better evaluations than she received, without identifying how Powell has knowledge of their ratings or what the ratings were. [25-1] ¶¶ 2, 3, 18. She also refers to hearsay conversations with a parent and with other teachers. [25-1] ¶¶ 10, 14. Powell's declaration is disregarded to the extent it asserts such inadmissible facts, and to the extent Powell uses it to create an issue of fact contradicting her deposition testimony. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.");

2

## II. Background

Powell began working at Ingalls Memorial Hospital's child care center in 1994. [25] ¶ 6.[2] During Powell's employment, her direct supervisors were the center's director, Deborah Craemer, and its manager, Bonnie Spelde. *Id.* On July 23, 2013, the manager received complaints about Powell from two teachers at the center. Teacher Amy Czachura said that Powell denied certain children outside play time on an almost daily basis during the summer. *Id.* ¶ 39. Teacher Debbie Redmore said that Powell frequently disciplined children for talking by not allowing them their outside time, disciplined children by making them stand in the hall, and did not allow children to speak during lunch time. *Id.* ¶ 40.

The following day, the parent of a six-year-old boy in Powell's classroom complained to the manager that her son said that Powell was "flicking" his head and squeezing his hand, and that Powell showed favoritism toward certain children in her class. *Id.* ¶ 41. That same day, an assistant teacher at the center also

---

*McGowan v. Deere & Co.*, 581 F.3d 575, 580 (7th Cir. 2009) ("affidavits can be used in opposition to motions for summary judgment provided that they meet the usual requirements, such as being based on personal knowledge and setting forth specific facts showing that there is a genuine issue for trial," but non-specific assertions are insufficient.); *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005) (A plaintiff cannot "attempt to create an issue to avoid summary judgment with a newly filed affidavit which contradicts her earlier testimony."). Also, Powell's response to Ingalls's 56.1 statement disputes several facts but later relies upon them in her brief opposing summary judgment. *See, e.g.,* [26] at 3; [25] ¶¶ 20–22, 62, 64. Powell's improper responses could be stricken in their entirety for failing to comply with Local Rule 56.1. *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). But in the interest of resolving summary judgment on the merits and of not penalizing the plaintiff for her counsel's failure to observe the Local Rules, Powell's responses are considered to the extent that they point to admissible evidence disputing Ingalls's stated facts.

[2] Bracketed numbers refer to docket numbers on the district court docket. [25] refers to Powell's response to Ingalls's Local Rule 56.1 undisputed statement of material facts.

3

informed the supervisors that Powell was picking on certain children in her class and that the children were afraid of her. *Id.* ¶ 43. The manager then informed the director about the other complaints she had received from other teachers and the parent. *Id.* ¶ 44. The director, Craemer, found the conduct reported to her to be "extremely concerning" because it potentially violated the Illinois Department of Children and Family Services' day care center licensing standards and the center's own policies prohibiting the abuse of children, mandating outdoor play and relaxed meal times, and prohibiting excessive "time outs." *Id.* ¶¶ 8–10, 45. The supervisors met with Powell that day and told her about the reports they received. *Id.* ¶¶ 46–47. During the meeting, they perceived Powell's response as a denial that she had engaged in any improper behavior and a refusal or reluctance to take responsibility for her actions. Her supervisors told Powell that they were sending her home with pay to further investigate the allegations. *Id.* ¶¶ 48–49.

The next day, the supervisors met with the parent and four teachers. The teachers provided written statements with additional complaints regarding Powell's treatment of the children in her care, including favoritism, prohibiting children from speaking during lunch, prohibiting certain children from water or outside play time, and yelling at certain children. *Id.* ¶¶ 50–54. After conducting their investigation, Powell's supervisors believed that the concerns raised were well-founded, that the children in Powell's classroom were afraid of her, and that Powell had not been forthcoming in the previous meeting regarding how many children she kept from attending recess or water play. *Id.* ¶ 55.

4

On July 29, 2013, the supervisors told Powell that, after their investigation, they were even more concerned and had confirmed that: children were not allowed to talk during lunch, in violation of IDCFS and the center's policies; children were kept in time outs for an excessive period of time and were improperly prohibited from participating in outside activities and water play as punishment; Powell had inappropriately touched a child by flicking him on the head and squeezing his hand, and Powell had fostered a fear-based environment in her classroom. *Id.* ¶¶ 56–57. They told Powell that they were terminating her employment and gave her documentation of her termination, which stated that "inappropriate conduct" was cause for Powell's immediate termination because Ingalls had received "complaints of physical behavior toward children that are not appropriate for her position" and because Powell "conducted a hostile workplace by creating a fear-based environment for the children on a daily basis." *Id.* ¶ 60.

### III. Analysis

At the summary-judgment stage, claims of employment discrimination are evaluated under the "direct" or "indirect" methods of proof in *McDonnell Douglas v. Green,* 411 U.S. 792 (1973), "depending on the kind of evidence the plaintiff presents in opposition to the motion." *Smith v. Chicago Transit Auth.*, —F.3d—, No. 14-2622, 2015 WL 7423824, at *3 (7th Cir. Nov. 23, 2015). Under the direct method, the plaintiff can defeat summary judgment "by presenting sufficient direct evidence of the employer's discriminatory intent or 'a convincing mosaic of circumstantial evidence . . . that point[s] directly to a discriminatory reason for the employer's

5

action.'" *Id*. (quoting *Davis v. Con–Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 783 (7th Cir. 2004)).

Under the indirect method, the plaintiff "must first meet his burden of production on the familiar four-part test for establishing a prima facie case: (1) he is a member of a protected class; (2) he performed his job to his employer's expectations; (3) he suffered an adverse employment action; and (4) one or more similarly situated individuals outside his protected class received better treatment." *Smith*, 2015 WL 7423824, at *3 (citing *Antonetti v. Abbott Labs.*, 563 F.3d 587, 591 (7th Cir. 2009)). "If the plaintiff does so, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment decision," and then the burden "shifts back to the plaintiff to provide evidence establishing a genuine dispute about whether the employer's stated reason was a pretext for prohibited discrimination." *Id*.

Here, Powell proceeds under the indirect method of proof. [26] at 4.[3] It is undisputed that Powell satisfied the first and third parts of a prima facie case: she is a member of a protected class (black and over the age of 40) and suffered an adverse employment action (termination).[4] Ingalls argues that Powell cannot satisfy

---

[3] Powell states that she is proceeding under the indirect method of proof but, confusingly, also references case law on circumstantial evidence under the direct method. [26] at 4–5. Because Powell fails to point to any direct or circumstantial evidence that Ingalls's decision to terminate her was motivated by race or age—*see, e.g., Smith*, 2015 WL 7423824, at *3 (circumstantial evidence can include suspicious timing, ambiguous oral or written statements, or behavior toward other employees in the protected group)—Powell's claims are analyzed under the indirect method.

[4] In moving for summary judgment, Ingalls argues that pre-termination events complained of by Powell (negative performance evaluation, not receiving a summer camp teaching position, not being permitted to change vacation date) were not materially adverse

6

the second and fourth parts because she cannot show that she was performing her job to Ingalls's expectations or that similarly situated employees were treated more favorably. In turn, Powell argues that she was performing her job to Ingalls's expectations and that Ingalls applied its expectations to similarly situated employees in a more favorable manner. Ingalls also contends that Powell has no evidence to show that its reasons for her termination were pretextual.

A.  **Job Expectations**

Ingalls maintains that Powell cannot establish that she was performing her job to Ingalls's expectations because Powell's conduct—as described in the complaints from teachers and a parent—violated IDCFS licensing standards and the center's own policies. Powell denies any misconduct and argues that the complaints against her are inadmissible hearsay. Because Ingalls acknowledged that it is offering these complaints not for their truth but instead for the non-hearsay purpose to show their effect on Powell's supervisors ([29] at 3]), Ingalls cannot offer these complaints to show that the misconduct actually occurred. *See* Fed. R. Evid. 801(c); *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 430 (7th Cir.

---

employment actions. Powell failed to address these arguments and instead only identified her termination as the adverse employment action supporting her prima facie case. [26] at 6. Powell has therefore conceded that the only actionable adverse employment action is her termination. Moreover, Powell has not identified any specific, admissible evidence that similarly situated employees outside her protected class received a better evaluation, the summer camp assignment, or permission to change vacation dates, and so her discrimination claims based on these pre-termination incidents fail.

7

2004). Powell's denial of misconduct creates an issue of fact as to whether she was performing to Ingalls's expectations.[5]

### B.     Similarly Situated Persons

In addition, Powell argues that Ingalls applied its expectations to similarly situated employees in a more favorable manner. Specifically, Powell argues that her supervisors had received complaints about instances of similar misconduct by two non-black teachers, Czachura and Redmore (the same teachers who reported concerns about Powell to the supervisors), who were similarly situated but more favorably treated because they were disciplined but not terminated.[6] Another staff member had reported to the director that Czachura was too rough with a child while putting the child in a time out. After speaking to Czachura, the supervisors issued her a written warning and closely monitored her classroom, but did not fire her. [25] ¶¶ 64–65. On a separate occasion, the director had observed Redmore exhibiting inappropriate behavior to Redmore's grandchild (a student at the center) by being very stern and loud towards him in the hallway after school. Redmore was

---

[5] Powell believes that her performance evaluation from February 2013 (giving her a "Solid" rating) shows that she was meeting Ingalls's standards, but Ingalls argues that the review was too far removed in time from the July 2013 complaints and termination to be considered. Courts look to an employee's performance at the time she was fired, not whether she previously satisfied the employer's expectations. *Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1158 (7th Cir. 2014). Therefore, Powell's February 2013 performance evaluation sheds little light on whether she was meeting Ingalls's expectations in July 2013.

[6] Powell asserts that Czachura and Redmore were also less than 40 years old, but fails to identify any evidence in the record establishing their age. [26] at 3. Ingalls concedes that Czachura and Redmore are not black, but asserts (without citing to any evidence) that they were both over 40 years old in 2013. [29] at 8. Because Powell has not offered admissible evidence to show that these teachers were younger than her, she cannot establish the similarly-situated element of her age discrimination claim, and Ingalls is entitled to summary judgment on that claim.

suspended and ultimately returned to work after completing counseling and being cleared by the Ingalls's Hospital Employee Assistance Program. [25] ¶¶ 61–62.

For Czachura and Redmore to be appropriate comparators, Powell must show that they "shared the same supervisor, performance standards, and 'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" *Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 688 (7th Cir. 2007) (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir. 2000)). While the teachers shared the same supervisor and performance standards, there are differentiating circumstances distinguishing their conduct, making Czachura and Redmore inappropriate comparators.

Unlike Czachura and Redmore, Powell received previous written warnings in 1996 and 2004 for her treatment of the children in her care. *See, e.g.*, *Johnson v. Koppers, Inc.*, 726 F.3d 910, 916 (7th Cir. 2013) (employee disciplined less severely than plaintiff was not similarly situated because, unlike the plaintiff, he did not previously engage in misconduct). Also, in contrast to Czachura and Redmore, who were each disciplined for single incidents of misconduct with a single child, Powell was subject to complaints from a parent and a total of six other teachers regarding her treatment of multiple children in her care over the course of the summer. Powell's conduct was significantly more egregious than either of her proposed comparators. *See, e.g., Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 546 (7th Cir. 2002) (employee not comparable to others who falsified activity logs but

9

were not disciplined because employee's falsification more serious and was committed after prior warnings); *Wilkins v. Riveredge Hosp.*, 130 Fed. App'x 823, 829 (7th Cir. 2005) (mental health employee who made only two false notations in a half hour period regarding the location of a psychiatric patient was not similarly situated to employee who recorded incorrect entries for five hours). Powell cannot show that similarly situated persons were treated more favorably than her and therefore cannot establish her prima facie case for either of her discrimination claims.

C.     **Pretext**

Even if Powell had established a prima face case of discrimination, she would have needed to provide "evidence establishing a genuine dispute about whether the employer's stated reason was a pretext for prohibited discrimination." *Smith*, 2015 WL 7423824, at *3. Powell, however, has not presented evidence sufficient to enable a trier of fact to find that Ingalls's proffered explanations for her termination were pretextual. "Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action." *Id*. (quoting *Wolf v. Buss (Am.) Inc.,* 77 F.3d 914, 919 (7th Cir. 1996)). "Summary judgment for the defendant is appropriate if the plaintiff fails to carry [her] burden to establish a prima facie case or is unable to show a genuine dispute about whether the neutral reason advanced by the employer was merely pretextual." *Id*.

Ingalls terminated Powell because her supervisors believed the teacher and parent complaints regarding inappropriate treatment of the children in her care, which was contrary to IDCFS's licensing standards and the center's policies. [25]

10

¶¶ 55–60. In analyzing pretext, courts "do not evaluate whether the stated reason 'was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge.'" *Harden v. Marion Cty. Sheriff's Dep't*, 799 F.3d 857, 864 (7th Cir. 2015) (quoting *Harper v. C.R. England, Inc.*, 687 F.3d 297, 311 (7th Cir. 2012)). Other than her speculation that the teachers and the parent raising complaints about her were mistaken or lying and her denial of committing any misconduct, Powell has offered no evidence to show that her supervisors did not honestly believe and were not honestly concerned about the numerous complaints about Powell's treatment of the children in her care.[7] *See, e.g., Zayas*, 740 F.3d at 1159 ("Thus, it is irrelevant if [plaintiff's] emails were not egregious enough to justify her termination, as long as [her supervisor] believed they were. [Plaintiff] offered no evidence to show that [her supervisor] lied about his reaction to the emails. Therefore, we have no trouble finding that [plaintiff's] emails were not a pretextual basis for her termination."); *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 854 (7th Cir. 2015). Because Powell has failed to show a genuine dispute about

---

[7] Powell disputes the allegations by denying that she engaged in misconduct and asserting that the parent and teacher complaints were hearsay. As previously addressed, the complaints are not hearsay when not offered for their truth, but to show their effect on Powell's supervisors. Also, Powell's denials of misconduct do not prevent her supervisors from believing the veracity of the numerous complaints against her. Even if the substance of the complaints had been false, nothing in the record indicates that Powell's supervisors did not believe them. *See, e.g., Debruin v. Appleton Papers, Inc.*, 69 Fed. App'x 332, 336 (7th Cir. 2003) (evidence in discovery provided a basis to infer that complaints made against plaintiff were false, but plaintiff could not establish pretext because nothing in the record indicated that the plaintiff's supervisor "did not give credence to the complaints at the time they were filed or that he was presented with evidence that would have warranted his believing that the reports were not true"). Powell has not offered evidence to explain why the supervisors could not have reasonably and genuinely credited the complaints over Powell's denials.

whether Ingalls's reason for her termination was merely pretextual, summary judgment for Ingalls is appropriate. *Smith*, 2015 WL 7423824, at *3.[8]

## IV. Conclusion

Defendant's motion for summary judgment [18] is granted. Enter judgment in favor of defendant and terminate civil case.

ENTER:

                                                                Manish S. Shah
                                                                United States District Judge

Date: 12/7/15

---

[8] Powell appealed her termination through Ingalls's three-step grievance process, which involved: an initial meeting with Powell, her supervisors, and Ingalls's human resource director; a second meeting with Powell, Ingalls's human resource director, and a vice president; and a grievance hearing before a panel of three Ingalls employees who were unknown to Powell and were from other parts of the hospital. [25] ¶¶ 66–77. Powell's termination was upheld at every stage of the grievance process, and her sole argument in response is that these grievance decisions relied on the hearsay complaints from the parent and other teachers, which were untrue. But she has not offered any evidence that the additional Ingalls employees who upheld her termination did so on a pretextual basis or were a cat's paw for Craemer and Spelde.